UNTIED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JAMES FISCHER,

           Plaintiff,          Case No. 15 CV 6266

v.                                     Judge Nathan

DEAN ERIC STIGLITZ,                 **AFFIDAVIT IN SUPPORT**
LAURIE ANNE HERBOLDSHEIMER,    **OF MOTION TO DISMISS**
GOLDEN RULE HONEY, LLC             **CLAIMS AGAINST**
                                                  **HERBOLDSHEIMER AND**
           Defendant.             **GOLDEN RULE**

---------------------------------------------------------------x

STATE OF MASSACHUSETTS  )
                               ) ss.:
COUNTY OF WORCESTER    )

      Dean Eric Stiglitz, being duly sworn, deposes and says that I am the first named defendant in the above captioned matter:

      1.    This affidavit is submitted by defendant, Dean Eric Stiglitz (hereinafter referred to as ("Stiglitz" or by use of first person pronouns) on behalf of defendants Laurie Herboldsheimer (hereinafter "Herboldsheimer") and Golden Rule Honey, LLC (hereinafter referred to as "Golden Rule") in support of their motion to dismiss the amended complaint pursuant to FRCR 12 (b)(2) for lack of personal jurisdiction and pursuant to FRCP 12(b)6 for failure to state a claim upon which relief can be granted.

      2.    As alleged in the amended complaint, Herboldsheimer is a resident of Massachusetts and Golden Rule is a Massachusetts Limited Liability Company with a principal place of business in the Commonwealth of Massachusetts.  As issues have been raised by Plaintiff, James Fischer (hereinafter "Fischer" or Plaintiff), as to the

status of Golden Rule, I attach herewith a true copy of the Certificate of Organization of Golden Rule dated July 28, 2008, as **Exhibit 2,** and the most current filing for the LLC, dated July 1, 2015, as **Exhibit 3,** showing that it is a valid entity and in good standing at this time.

3.  Golden Rule has two members, Herboldsheimer and I. We own and operate the company on a 50/50 basis. The formation documents provide that the purpose of the business is "HONEY AND HONEYBEE PRODUCTION, PACKING AND SALES, CONSULTATION, EDUCATION AND RESEARCH REGARDING HONEYBEES AND HONEY". We are beekeepers and produce our own honey, which we sell retail locally in Massachusetts. In addition, we purchase honey from three suppliers which is delivered to us in bulk packaging and is then packaged and marketed by us to the public, including sales through Golden Rule's website, BeeuntoOthers.com. This website is owned and operated by Golden Rule. It is directed to the world wide web and does not have New York or any specific locality as a target market.

4.  In an effort to give this court the impression that Golden Rule has a New York presence, Plaintiff has claimed that Golden Rule purchases and sells its honey on a continuous basis in New York. Plaintiff is mistaken. Plaintiff cites the fact that Golden Rule purchases honey from a New York supplier named Bob Brachmann. In fact, Golden Rule purchases honey from Mr. Brachmann, who operates out of Little Valley New York and from two other honey vendors, Kirk Webster of New Haven, Vermont and Dee Lusby of Arizona. Golden Rule did not purchase any honey from Mr. Brachmann or any other New York vendor before 2012 and in the relevant year of 2014, based upon the records available to me and Herboldsheimer at this time, such purchases were

approximately 12% of the honey we purchased for resale along with our own honey. When we purchase honey from Mr. Brachman, which we do only once a year, he delivers the honey to Vermont and leaves it with one of his friends. We pick up the honey from the friend in Vermont. While we did visit Mr. Brachmann's premises one time in 2012, that was the last and only time we did business with him in New York. Accordingly, Golden does not have a continuous and permanent relationship to New York by making one annual purchase from Mr. Brachmann who, when dealing with Golden Rule, does so in Vermont, not in New York.

5. Plaintiff claims that Golden Rule does business in New York because it sells its product in New York and cites three New York retailers to whom we sell our honey: Marlow & Daughters and Blue Apron, both in Brooklyn, New York and Matt's Honey House at the Columbus Circle Market, in New York City. Plaintiff is mistaken.

6. Golden Rule made two shipments to Marlow & Daughters in 2010 and 2011 for a total of $1311 and two shipments to Blue Apron in 2011 for a total of $1253. We never sold product to these stores after this 2011. Golden Rule sold honey to Matt Deprizio, who arranged to sell it at a holiday market between Thanksgiving and Christmas in New York City in 2011 and 2012. Mr. Deprizio bought the honey in Massachusetts and brought it to New York City on his own. He was not an agent or subcontractor of Golden Rule, as plaintiff has alleged. This holiday market was strictly occasional and only lasted a total of 8 weeks in the two years. It was not continuous and purposeful or permanent conduct by Golden Rule in New York.

7. Plaintiff alleges that Golden Rule has a continuous relationship with New York because it holds a conference in Massachusetts and invites Sam Comfort, a

resident of New York to hold workshops on beekeeping. This is among the most specious allegations of all made by plaintiff. Mr. Comfort has many residences and moreover, inviting someone who lives in New York to attend a Massachusetts event no is not doing business or transacting business in New York.

8. The sale of honey by Golden Rule has nothing to do with the claims made by plaintiff. Plaintiff introduced honey sales into this case as a false basis to try to establish personal jurisdiction of this court. The gravamen of the action is defamation raised by Plaintiff in the Third Cause of Action of the Amended Complaint, which is the basis for all of the claims alleged against all Defendants.

9. The alleged defamatory statements were posted by me in my individual capacity, using my pseudonym "Deknow", on two separate websites that are on the world wide web and directed to beekeepers all over the world. They are not directed to New York and have no special relationship with New York. The websites that carried the posts in issue were Yahoo Groups Organic Beekeepers (hereinafter referred to as "the Yahoo website") and BeeSource.com.

10. As this Court undoubtedly knows from the three prior motions made in this case in 2010, Herboldsheimer and I wrote a book entitled "The Complete Idiot's Guide to Beekeeping", which was published by Alpha Books, a division of Penguin (USA), Inc. Although we wrote the book, for business reasons, the designated author on the contract with Alpha Book is Golden Rule. The publishing contract is subject to a confidentiality clause and cannot be produced here. However, if the Court wishes to review it, we offer to produce it under seal.

11. Plaintiff alleges correctly that Alpha Books and Penguin Books are New York publishers, however, the publishing contract was executed by us in Massachusetts. The book was not researched, developed or produced in New York. And, while we agreed to apply New York substantive law to disputes with our publisher, we did not agree to apply New York law to disputes with Plaintiff.

12. In addition to writing about beekeeping, Herboldsheimer and I have been invited to speak at numerous beekeeping groups to lecture and discuss our ideas about beekeeping. These speaking engagements have taken us to 7 states, including New York. On two occasions I was invited to address New York State groups. Thus, we appeared at the Ulster County Beekeepers on Feb 13, 2012, the Catskill Beekeepers on Feb 14 2012, and the Long Island Beekeepers Club on March 24, 2013.

13. While our book was discussed and promoted during these engagements, they were not book tours, in which we set out to sell books. We did not initiate any of these events; we were invited and the subject matter of the discussions was photographing bees, the microbial culture in the hive, raising bees and producing honey.

14. In 2010 our publisher provided me with a copy of a letter with the typed signature of Plaintiff, James Fischer, which was not only critical of our book, it demanded that the book be rewritten. The Plaintiff is a well known expert in the beekeeping community and his aggressive opposition to our book was of concern at the time. It was my decision that the best way to protect our relationship with our publisher and our ideas about bee husbandry that are espoused in our book was to post the entire letter in the Yahoo website and ask for comments from those who read our book.

15.     Plaintiff continued harass our publisher and me, so in 2013, I published his letter once again on the Yahoo website and sought more comments. In the amended complaint, plaintiff alleges that he did not write this letter and my posting of it was defamatory and misused his good name to our advantage to sell books.  However, the letter was received from Plaintiff's email address and no one but Plaintiff would have the knowledge or ability to write it.

16.     A second basis for t he defamation arose in an internet post that I made in BeeSource on August 24- 25, 2014.  A copy of said posts is annexed hereto as **Exhibit 4**.  The alleged defamation are my posts No. 12 and 17.  "BeeSource" is a discussion group used by beekeepers to exchange experiences, ideas and information about maintaining bee hives and producing honey.   It is hosted, by Barry Birkey, who is from Illinois and, as far as I know, has no New York connection.

17.     The only defamatory statements alleged are those made in my internet posts, on the Yahoo site and BeeSource.   No defamatory statements are alleged to have been posted on Golden Rule's BeeUntoOthers website. In fact, no allegations are made against Golden Rule at all, other than the fact that it is owned and managed by Herboldsheimer and me.

18.     The amended complaint alleges that "Defendants continuously solicits business from New York residents over the internet *via* their website 'BeeUntoOthers.com' by email solicitations, and by directly accepting payment from New York residents" (Amended Complaint par. 9).  In fact, the website, which is accessible to New Yorkers and anyone else with access to the word wide web, has no specific solicitations in New York.

19. Applying the legal standard for doing business in New York, neither Golden Rule, Herboldsheimer nor I:

    (a)    have an office in New York and never have;

    (b)    have any bank accounts or other property in New York and never have; (other than my bank accounts in NY when I was in college in the mid 90's...all unaffiliated with and predating the business by several years)

    (c)    have a telephone listing in New York and never have;

    (d)    have any public relations work in New York; and

    (e)    or have anyone working for us or representing us in New York who are permanently located in the State of New York to promote any of our business interests my interests.

20. By reason of the foregoing, neither Golden Rule, Herboldsheimer nor I were ever "doing business in New York State".

21. It must be emphasized here that the alleged defamation was not contained in our book. It was not alleged that plaintiff was defamed during our limited speaking engagements or in the internet advertising by BeeUntoOthers. The allegations of defamation are limited to statements in the Yahoo website and the BeeSource discussion group, which were not made in New York or targeted to New York residents.

22. Therefore, whatever allegations are made by plaintiff in regard to transacting business by advertising or promotion of our book in New York (all of which are denied) the alleged defamation does not arise from those transactions.

23. All of the remaining causes of action alleged in the amended complaint are dependent upon the viability of the defamation cause of action. The alleged false and defamatory statements are the basis for the alleged civil rights cause of action (First Cause of Action), the Lanham Act violations (Second Cause of Action) the tortious interference with prospective economic advantage (Fourth Cause of Action) and the personal injury claim (Fifth Cause of Action). As the Court does not have jurisdiction over the alleged defamation claims, all of the other causes of actions also must be dismissed.

## THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST HERBOLDSHEIMER

24. The complaint does not allege that Herboldsheimer made any defamatory statements, committed any tortious conduct or violated any rights of Plaintiff. The amended complaint alleges that:

> "A corporate director or officer's participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts."

(Amended complaint par. 18). Plaintiff's footnote to this quote refers to a California case. Even if this were the applicable statement of the law in our case (I am advised that it is not), he fails to allege that Herboldsheimer "provided knowing consent or approval" of the defamatory statements. Therefore, Plaintiff fails to state a claim against Herboldsheimer.

25. Herboldsheimer's only role in this dispute is that she is a member of Golden Rule, a limited liability company. Since a member of a limited liability company is not personally liable for the acts of the company, the claims alleged against

Herboldsheimer must be dismissed for failure to state a claim upon which relief may be granted.

_____
Dean Eric Stiglitz

Sworn to before me this

3rd day of December, 2015.

_____
Notary Public

DAVID R. PELLETIER
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 24, 2018