UNTIED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

JAMES FISCHER,

                         Plaintiff,                             Case No.  15 CV 6266

            v.                                                   Judge Nathan

DEAN ERIC STIGLITZ, LAURIE ANNE
HERBOLDSHEIMER and GOLDEN RULE
HONEY, LLC.,

                          Defendant.

---------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE AMENDED COMPLAINT AND IN RESPONSE TO
PLAINTIFF'S APPENDIX**

SPEYER & PERLBERG, LLP
*Attorneys for Defendants,*
115 Broadhollow Road, Suite 250
Melville, New York 11747
Perlberg@speyerperlberg.com
(631) 673-6670

## Table of Contents

**Page**

Table of Authorities.................................................................. ii

Preliminary Statement........................................................... 1

**Point I –**

The Appendix Contains Conclusory And
Speculative Misstatements That Do Not
Support Plaintiff's Contention That The
Court Has Personal Jurisdiction Over Stiglitz ............................. 1

The Complaint Must Be Dismissed Because
It Sounds In Defamation ...................................................... 10

**Point II –**

Plaintiff Should Be Sanctioned And Ordered
To Pay Defendant's Attorneys Fees For Making
False Statements To This Court .............................................. 12

Conclusion.......................................................................... 15

## Table of Authorities

<u>Cases</u>

<u>Page</u>

*Chloe v. Bees of Beverly Hills, Inc, LLC,*
616 F.3d. 158 (2nd Cir. 2008) .............................................................. 3

*CT Chemical (USA), Inc. v. Horizons International, Inc.,*
106 F.R.D. 518 (SDNY 1985)............................................................. 4

*Macolor v. Libiran,*
015 U.S. Dist. LEXIS 34010 (SDNY 2015) ........................................... 14

*Park-Bennet Galleries, Inc.v.Franklyn,*
26 N.Y. 2d 13 (2015) ....................................................................... 4

*SEC v. Smith,*
710 F.3d 87 (2nd Cir. 2013) ........................................................ 13, 14

## <u>Other Authorities</u>

CPLR § 301 ...................................................................................6

CPLR § 302 ...............................................................................3, 4, 7

Rule 11(c)(3) of Federal Rules of Civil Procedure..........................................13

<u>PRELIMINARY STATEMENT</u>

Defendant, Dean Stiglitz (Stiglitz) submits this memorandum of law in further support of his motion to dismiss the Amended Complaint against him (Doc.38), in response to the Appendix (Doc. 54) filed by Plaintiff, James Fischer (Fischer) that was submitted after Stiglitz filed his reply in support of the motion (Docs. 50-52).

In addition, Stiglitz seeks an award of sanctions and attorneys fees for the reason that Fischer sought and received permission to submit the Appendix on the basis of a letter dated December 13, 2015 to Judge Nathan in which he falsely stated that the Appendix was prepared to be submitted with his opposition to this motion, but was accidently omitted when Fischer dropped off his opposition papers  (Doc. 49, filed December 4, 2015) in the court's night depository without checking to confirm the Appendix was included. This was a lie as proven by the fact that the Appendix refers the Declaration of Sennea Raslin dated December 9, 2015, which did not exist when the Appendix was said to have been accidently omitted from Plaintiff's opposition papers.

<u>POINT I</u>

**THE APPENDIX CONTAINS CONCLUSORY AND SPECULATIVE MISSATEMENTS THAT DO NOT SUPPORT PLAINTIFF'S CONTENTION THAT THE COURT HAS PERSONAL JURISDICTION OVER STIGLITZ.**

Plaintiff's letter to Judge Nathan dated December 13, 2015, states that the Appendix was merely a "listing of [of] each of Defendant's specific forum-related activities and the implications of each…" In fact, the Appendix is an eighteen page brief, rehashing all legal and factual arguments of the motion and raising new legal and factual arguments, which were not previously asserted.  The Appendix argues the merits of the causes of action in the Amended Complaint.  As this motion is limited to

the issue of personal jurisdiction over Stiglitz, the merits of the causes of action are immaterial, and we will not respond to non-procedural issues at this time.

Fischer begins his Appendix with the claim that he does not know who is responsible for writing the internet posts in issue.  For this point he cites to two or three posts in which Stiglitz or Herboldsheimer apologized on a public website for making a post in the other's name. They explained in the Exhibit referred to in the Appendix that they share a computer and on occasion will make a post without realizing that the other had not closed the account. The fact that it happened on two or three discrete occasions and an apology was forthcoming, does not support Fisher's claim that he does not know who made the internet posts in question.  Quite the opposite is true. This contention was not raised in complaint, the amended complaint or in Plaintiff's opposition to this motion.  In all prior papers, Fischer alleged that the internet posts in question were made by Stiglitz, signed by his well known "handle" of deknow  (a variation of Dino, which is Stiglitz's knick name) and Stiglitz  never disputed that he made the posts. Since this is motion to dismiss the claims only against Stiglitz, it does not serve Plaintiff's purposes to feign confusion as to who made the internet posts. They were made by Stiglitz and, as stated in the motion papers submitted to this court, he stands behind them.

After claiming that he is confused as to who is responsible for the tortuous conduct alleged in the Amended Complaint, Plaintiff argues the substantive law of joint and several liability. Without accepting his incorrect legal conclusions, suffice it to say, that the issue of joint and severally liable between and among the Defendants named herein does not address the one issue raised in the motion- that the court lacks

personal jurisdiction over Stiglitz because he does not do business or transact business in New York and the torts alleged against him do not arise from his minimal New York activities.

Under the topic of "Defendants' Contacts with the Forum" (Appendix at p. 3 of 23), Plaintiff claims that there are "extensive, long lasting and complex contacts" with the forum, but he does not offer any proof of it. Instead, he claims "Discovery is needed to uncover the rest [of the contacts], as it seems that Defendants have more contacts than have been uncovered so far." There is no basis for this statement and it certainly does not "seem" so by Defendants. Moreover, Fischer does not state what discovery he requires or how it will uncover more contacts. While this Court has broad discretion to order discovery on the jurisdiction issue, Mr. Fischer is seeking what is often referred to a "fishing expedition". First, he must provide some basis for his belief that there are more contacts to discover. Saying that it "seems" so will not justify the trouble and expense that Stiglitz will have to endure to comply with such discovery.

Plaintiff relies on *Chloe v. Bees of Beverly Hills, Inc, LLC,* 616 F.3d. 158 (2nd Cir. 2008) to support his argument that the marketing of products in New York supplies sufficient grounds for finding personal jurisdiction under CPLR 302 (a)(1). In that case, the defendant was selling counterfeit *Chloe* handbags using an interactive website. There were 52 recorded shipments into tNew York State and there were "extensive business contacts with New York customers." There are no similar facts present in our case. More to the point however, this case, based upon CPLR 302 jurisdiction, had at its foundation the finding that the tort in question, the sale of a counterfeit handbags, arose out of the New York contacts. Thus, the Second Circuit held:

> Having identified the single act of an out-of-state defendant
> employee shipping an item into New York, we next review
> the record as it relates to Queen Bee's contacts with New
> York.  In this regard, we note that both New York's long-arm
> statute and the _Due Process Clause_ require that Queen
> Bee's contacts with New York have some connection to
> Chloe's trademark infringement claim.  See _Helicopteros,_
> _466 U.S. at 414_ (noting that specific jurisdiction is proper
> "[w]hen a controversy is related to or 'arises out of' a
> defendant's contacts with the forum"):  _Chaiken v. VV Publ'g_
> _Corp., 119 F.3d 1018, 1028 (2d Cir., 1997)_ (same); _Kreutter,_
> _522 N.E.2d at 43_ (requiring "substantial relationship"
> between single act transaction "and the claim asserted"
> under _N.Y. C.P.L.R. § 302(a)(1); McGowan v. Smith, 52_
> _N.Y.2d 268, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643 (N.Y._
> _1981)_ (requiring "some articuable nexis between the
> business transacted and the cause of action sued upon").

at p. 166.

Plaintiff also cites and relies upon _Park-Bennet Galleries, Inc. v. Franklin,_ 26

N.Y. 2d 13 (2015) in which an out of state bidder at a New York auction did not pay for

an item he bid on over an open telephone line he arranged with the Plaintiff prior to the

auction. The Court held that a tort can occur inside the State even if the tortfeasor was

physically outside the State.  It held that CPLR 302 was a single act state, meaning that

one tortuous act, if purposeful, could confer personal jurisdiction. However, it held that

under these circumstances: "there is ample basis for concluding that the defendant is

subject to the jurisdiction of our courts with respect to a cause of action arising out of

the auction." At p. *17. (Emphasis added.) In our case, the internet postings, which form

the basis of all of the claims against Stiglitz, did not arise from any of the alleged New

York contacts. Hence, Plaintiff's reliance on _Park-Bennet_ is misplaced.

To the same effect, _CT Chemical (USA), Inc. v. Horizons International, Inc.,_ 106

F.R.D. 518 (SDNY 1985), relied upon by Plaintiff, which held: "A defendant over whom

jurisdiction is based on § 302(a)(1) may be sued <u>only on causes of action arising from</u> <u>the specific transactions of business in New York</u>." At p. *520. (Emphasis added.) As none of the internet posts, which form the basis for Plaintiff's claims alleged in the Amended Complaint, arise from any New York transactions of business, there is no jurisdiction over the person of Stiglitz.

The absence of any articulable nexus between the alleged New York contacts and the alleged tortuous conduct is fatal to Plaintiff's case. The Defendants produce and sell honey retail to the public.  They maintain an interactive website that is not directed at New York. That market consists of retail honey consumers. They also espouse treatment free methods of raising honey bees in their "The Complete Idiot's Guide to Beekeeping".  The market for their book is different from their retail honey market; it consists of beekeepers, who have no need whatsoever for Defendant's honey- they have their own.

Let us assume for the moment that the fantastic tale alleged by Fisher did occur; that Stiglitz drafted a letter which brutally criticized his own book; that the letter proclaimed that the book was so misinformed that  it was dangerous and that Stiglitz's publisher must not allow it to be published; that Stiglitz then  forged Fischer's name to the letter, hacked Fischer's  email account and emailed the letter to his (Stiglitz's) publisher so that it would arrive there  over Fischer's email address. Continuing, Stiglitz then posted the forged letter on the internet so that it would stir controversy and cause people to buy the book.

The claimed falsification of Fischer's name on the letter has nothing to do with the minimal New York contacts that Stiglitz or Co-Defendants have in New York.   If

Defendants' honey had been tainted and caused injuries in New York, jurisdiction would lie over the Defendants for entering the New York market with a defective product. In our case, Plaintiff urges that the Court leave reason behind and hold that since Defendant's offer honey for sale on their website, which may be accessed by New York consumers, they are liable for torts that have no connection with the sale of honey. Grasping for straws to find a connection where none exists, Fischer states in his Appendix an imaginary scenario in which Stiglitz has said:

> "Please buy our honey to fund our ongoing battle against Montsanto, Syngenta, Bayer CorpScience and the beekeepers and scientists who are their henchmen".

Appendix p. 10 of 23.

The problem with this argument is, it is based upon Fischer' s imagination. Stiglitz never made such a statement and it would be absurd on its face.  His retail customers have no interest in Montsanto, etc. Without some basis for making this statement, and there is no basis for it, Plaintiff should be admonished including it in his brief.

Fischer does not stop with advancing imaginary pleas by Stiglitz, he has the temerity to state in his Appendix that:

> " Defendants' book has been the hood ornament on their aspirations. Promoting the book sells their 'treatment free annual conferences, workshops, honey and their full line of products and services."

Appendix p. 8 of 23.

Fischer knows nothing of Defendant's aspirations. Moreover, Defendant's conferences, workshops and their full line of products and services are all offered and take place in Massachusetts. They do not provide an articulable nexus between any

New York contact of Defendants and their postings on the internet of an allegedly forged letter in Fisher's name that trashes Defendant's book.

Plaintiff does not claim that there are sufficient contacts to assert general jurisdiction under CPLR 301 and none of the cases he cites addressed general jurisdiction. As none of the contacts he does cite give rise to the alleged tortuous conduct, they are all irrelevant to the instant analysis. However, even if they had given rise to tortuous conduct, they were so insignificant that they could not be considered purposeful conduct necessary to satisfy the minimum requirements of CPLR 302(a).

Book Contract with Penguine (Appendix p. 8 of 23). Mr. Fischer states that the contract was executed and to be performed in New York. Mr. Stiglitz has testified t hat the contract was executed in Massachusetts and that the book was not researched, produced or developed in New York. Fischer has no knowledge of the facts of Stiglitz's relationship with Penguine and his speculation is no more than that. It should be rejected by this Court.

Honey contract with Bob Brachmann (Appendix p. 9 of 23) Mr. Stiglitz's affidavit states that approximately once a year Golden Rule purchases honey in bulk from Mr. Brachman. Although Brachman is from New York State, Golden Rule's contact with Brachman took place in Vermont where the honey was delivered. Plaintiff speculates:

> "This agreement is most likely a contract of indefinite duration within the meaning of Section 2-309 of the Uniform Commercial Code".

Fischer has no basis to make this statement. It is not based on anything that was said by Stiglitz or the Co-Defendants; it is not based on anything that was said by Brachman; and, it is not based on any documents.  As there is no basis for the claim

that there is a continuous long term contract with Brachman, the Plaintiff should be admonished for submitting it for consideration by this Court.

Subcontractor Agreement with Sam Comfort.   Mr. Fischer has denied knowledge that Comfort was a New York resident. The fact that Comfort is invited to Golden Rule's annual events to participate in making presentations, is not continuous, purposeful contact with New York. However, in another unsupported speculation, based on nothing more than Fischer's imagination, Fischer states that this is "most likely another contract of indefinite duration per UCC 2-309." (Appendix p. 10 of 23.)  This speculation is not based on anything said by Stiglitz or Co-Defendants; it is not based on anything that was said by Comfort; and, it is not based on any documents.  Indeed, Article 2 of the U.C.C. applies only to the sale of goods and could not apply to Comfort's services to be offered at Golden Rule's event.

As there is no basis for the claim that there was a continuous, long term contract with Comfort, the Plaintiff should be admonished for submitting it for consideration by this Court. Moreover, he admits that transactions with Comfort and the instant case are "little or none". This is a clear admission that Mr. Fischer has no compunction about wasting this Court's time.

Subcontractor/Agent/Employee Agreement with Matt Deprizio. (Appendix p. 9 of 18). Mr. Stiglitz testified that Deprizio had his own business; that during the holiday seasons between Thanksgiving and Christmas, Deprizio purchased honey from Golden Rule in Massachusetts and brought it to New York City for sale in 2011 and 2012. There is no basis whatsoever for Fischer's rank speculation that Deprizio was an employee, agent, dealer etc.  Fischer says it is "unclear if Defendants came to NYC themselves to

assist in selling at the Columbus Circle market." It is unclear to Fischer because he has

no knowledge or information whatsoever that Stiglitz or Co-Defendants ever came to

New York to assist this customer at this event. Plaintiff should be admonished for

submitting his unsupported, speculations for consideration by the Court.

Farm Family Insurance. Again, Fischer is grasping for straws. The home office

of a party's liability insurer has never been given any consideration in evaluating

contacts for personal jurisdiction.

Book Signings, Promotional Appearances, 'Speaking Engagments, other Trips to

the Forum. (Appendix p. 12 of 23). Stiglitz has agreed that he and Herboldsheimer had

appeared to speak at Beekeeping events in New York on three or four occasions, but

that there was no continuous or permanent presence in the State.  Fischer admits that

"it is unknown if any such torts were committed against Plaintiff [during these trips, but]

he may well have repeated the same oft told tales about Plaintiff." Thus, the trips to New

York were of brief duration, were in response to invitations, were not continuous or

permanent and, Plaintiff has no knowledge of any torts committed against him during

these trips. They are meaningless in any analysis of personal jurisdiction.

Website Email Announcement List.  Fischer has the temerity to state to this Court

that Defendants had a targeted New York in an email campaign despite the fact that

Stiglitz specifically denied that this ever happened.  He refers the Court to an exhibit

that was attached to his failed motion for a preliminary injunction, Exhibit 16 Doc. 24,

which is a sign up sheet for anyone who wants to be on the Golden Rule emails list.

There is not one reference to the State of New York in this Exhibit and Fischer, who has

proven his resourcefulness, has not produced or referenced one email that was directed to New York customers. Accordingly, this is a meaningless non-contact with New York.

     <u>Promotional Messages on cites that are on the World Wide Web.</u>  Fischer claims that the posts on the Yahoo website and the Beesource site were targeted to New Yorkers because, notwithstanding that he admits that he does not know how many subscribers to the site were from New York, New York has 6% of the U.S. population. Therefore, he submits that promotional material were targeted to 6% of the Yahoo subscribers who were likely from New York. (Appendix p. 16 of 23) This logic would support a claim that all internet communications available in the United States are directed to 6% of the New York population based upon the number of residence in the State.  Obviously, a campaign to solicit New Yorkers necessitates that New Yorkers, to the exclusion of others, are intended recipient of an email campaign. Nothing like that is alleged here.

## THE COMPLAINT MUST BE DISMISSED BECAUSE
## <u>IT SOUNDS IN DEFAMATION</u>

     The Appendix contains several paragraphs stating that the defamation cause of action of the Amended Complaint is withdrawn and therefore it no longer sounds in defamation and cannot be dismissed.  This is an unmistakable concession that the presence of defamation claim in the Third Cause of Action of the Amended Complaint destroys personal jurisdiction over Stiglitz. Fischer had an opportunity to abandon the defamation cause of action when he reviewed our identical arguments and authorities showing that the original complaint must be dismissed because of the restrictions on personal jurisdiction for defamation claims under CPLR 308.  He decided, however, to replead the defamation claim with full knowledge of the additional burden it imposes on

a Plaintiff attempting to find personal jurisdiction over a non-resident.  Notwithstanding

Fischer's status as a *pro-se* Plaintiff, there are only so many bites of the apple allowed.

It would be impossible for Stiglitz to respond to a hypothetical second amended

complaint without a defamation claim now, after all of the motion papers are submitted.

Moreover, if this were only a trademark case a whole line of other jurisdictional issues

would arise. For example, Fischer claims he manufacturers Bee Quick. He does not

indicate if he does it in an individual capacity, a corporate capacity or otherwise.  The

Bee Quick web site states:

> **Who's this "Fischer" person, anyway?**
> There is more than one us.  Both the patriarch of the family
> and his son are named James, and just to make matters
> more confusing, we each keep bees at different apiaries.
> We are nobody important and like it that way.

www.bee-quick.com

We do not know if Plaintiff is the father or son in this intentionally confusing

company. There are no companies with the name of Bee Quick licensed by the NYS

Department of State. The only identification of the manufacturer of this product is

printed on its bottle as "FISCHER ALCHEMY FARMAGEDDON, VA."  "Farmageddon"

is the name of a book and a documentary movie about organic foods and the

oppression of local farms.  It is not a place, but Virginia is.  If this is a case between a

Virginia company against a Massachusetts company, this Court would have no

jurisdiction. Stated otherwise, the only jurisdictional facts alleged in the Amended

Complaint are the facts that would support of defamation claim, for which personal

jurisdiction over Stiglitz is unavailable.

For all of the foregoing reasons, the complaint as it presently exists must be dismissed against Stiglitz.  Should he commence a new action limited to the Lanham Act claims, we will address the jurisdictional issues related to such an action at that time.

## POINT II

### PLAINTIFF SHOULD BE SANCTIONED AND ORDERED TO PAY DEFENDANT'S ATTORNEYS FEES FOR MAKING FALSE STATEMENTS TO THIS COURT.

As set forth in the Perlberg Declaration submitted in response to Fischer's Appendix, Fischer stated to this Court in his letter Dated December 13, 2015 that he accidentally omitted his Appendix to his opposition to the instant motion because he had was catching an early flight and he hurriedly filed the papers without counting the pages; that he realized his error after he had read our Reply to the motion that was filed on December 10, 2015 (Doc. 50 and 52). Based on this representation of an innocent mistake, the Court allowed Fischer to submit the Appendix and granted Stiglitz time to respond to it. (Doc. 56).

Fischer was dishonest with Court in his December 13th letter. The Appendix, which is not dated, could not have been accidentally omitted from Fischer's opposition papers that were filed on December 4, 2015 (Doc. 49), because the Appendix addresses and responds to the Declaration of Sennea Raslan (Doc.38) that was dated December 9, 2015, five days after his Appendix was represented to have been completed and accidentally left out of his submission. (Appendix p. 11 of 23).

Where an attorney or a party intentionally misrepresents facts to the Court to get an unfair advantage our system of jurisprudence is undermined. In the instant case, the

lie resulted in causing Stiglitz to incur substantial legal fees to prepare a second Reply. This involved extensive review by Stiglitz and counsel of the new facts alleged in the Appendix, extensive and time consuming legal research of the more than twenty cases and secondary authorities cited in the Appendix, reading and analyzing all cases that were cited in the new cases and all cases that followed or distinguished said cases. In total more than twenty hours was spend to prepare the reply to the 23 page Appendix, all of which was necessitated because Fischer lied to this Court.

Rule 11( c)(3)  of the Federal Rules of Civil Procedure provides that the Court has inherent power to order sanctions against an attorney or party who was dishonest with the court. In *SEC v. Smith*, 710 F.3d 87 (2nd Cir. 2013) the plaintiff discovered that Smith failed to reveal her interest in trust assets and falsified reports about the assets. Smith claimed it was an oversight.  In affirming an award of sanctions, the Second Circuit held: "Indeed, the record carries a circumstantial stench that only heroic credibility findings in her favor would dissipate." (Id. at p. *98)

The application of Rule (c)(3) was discussed by the Court wherein it held:

> Under Rule 11(c)(3) and the inherent power of the court,
> sanctions are appropriate where an individual has made a
> false statement to the court and has done so in bad faith.
> See *In re Pennie & Edmonds LLP*, 323 F3d 86, 90 (2d Cir.
> 2003) (Rule 11(c)(3); *DLC Mgmt. Corp. v. Town of Hyde
> Park*, 163 F3d 124, 136 (2d Cir. 1998) (inherent power).

(Id. at p. 96).

Heroics similar to that mentioned in *SEC v. Smith* would be needed to believe that the Plaintiff in our case was not intentionally dishonest when he stated to the Court that his Appendix was omitted from the filing of December 4th, when said Appendix specifically included references to the Raslin Declaration that had not existed on that

date. Although Rule (c )(3) states that the court may exercise its power to sanction "On its own", in *SEC v. Smith,* the Plaintiff requested that the court exercise this power and the District Court did so on Plaintiff's request. In our case Defendant, Stiglitz make the same request, that this Court invoike its inherent power to sanction Fischer and award attorneys fees to Stiglitz.

Also see *Macolor v. Libiran*, 2015 U.S. Dist. LEXIS 34010 (SDNY 2015), a case with facts very similar to ours in which counsel for plaintiff lied to the court about the reason he had not appeared at a court conference. Sanctions were awarded against the offending counsel for damages to the court and sanctions consisting of attorney's fees to opposing counsel. Judge Furman of this court, collecting applicable case law, explained:

> Rule 11 of the Federal Rules of Civil Procedure authorizes a Court to impose sanctions for deliberately making false statements to the Court. *See SEC v. Smith, 710 F.3d87, 97 (2d Cir. 2013).* Although sanctions under Rule 11 are typically imposed pursuant to a motion by the opposing side, a Court may impose Rule 11 sanctions *sua sponte* upon a finding of "subjective bad faith" on the part of the individual to be sanctioned. *Muhammad v. Walmart Stores E., L.P., 732 F.3d 104, 108 (2d Cir. 2013).*"[C]ourts in this Circuit have found subjective bad faith in a variety of cases, ranging from those involving overtly dishonest or contemptuous behavior, down to those where the court simply regarded an argument as frivolous." *Cadona v. Mohabir, No. 14-CV-1596 (PKC), 2014 U.S. Dist. LEXIS 62637, 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014)* (internal quotation marks omitted); *see also id.* (collecting cases defining "subjective bad faith"). Whatever the appropriate definition making a false statement with the intent to mislead the Court certainly meets that definition. *See Smith, 710 F.3d at 97* (equating subjective bad faith with the question of whether an individual "made a false statement to the court … in bad faith");

At p. *13.

It is submitted that this holding by Judge Furman applied "on all fours" to the instant case.  Hence, sanctions and attorneys fees against Fischer are warranted.

## **CONCLUSION**

Stiglitz requests that the motion dismissing the Amended Complaint against him be granted in all respects and that this Court award attorney's fees and sanctions against Plaintiff.

Dated:       Melville, NY
             January 6, 2016


                              Respectfully yours,


                              SPEYER & PERLBERG, LLP
                              Attorneys for Defendants


            By:    _____
                              Dennis M. Perlberg, Esq. (DP 9514)
                              115 Broadhollow Road, Suite 250
                              Melville, New York 11747
                              Perlberg@speyerperlberg.com
                              (631) 673-6670

TO:    JAMES FISCHER
       *Pro Se*
       Box 287048
       New York, New York 10128


S:\CURRENT\DMP\Stiglitz\Legal\Motions\Motion to Dismiss Amended Complaint\MOL Appendix reply DRAFT 2 point 2.docx

## AFFIDAVIT OF SERVICE BY ECF and REGULAR MAIL

STATE OF NEW YORK)
                          Ss.:

COUNTY OF SUFFOLK)

**Anita Matos**, being duly sworn deposes and says:

That deponent is not a party to this action, is over eighteen (18) years of age and resides in Deer Park, NY.

That on the 8th day of January, 2016, deponent served the within MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT AND IN RESPONSE TO PLAINTIFF'S APPENDIX upon:

JAMES FISCHER
Pro Se
Box 287048
New York, New York 10128
(Cases with Unofficial Cites Included by Regular Mail)

the Pro Se Plaintiff for the respective parties in this action, at the above address(es) designated by said Pro Se Plaintiff for that purpose, via Electronic Filing (ECF) and by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

_____
ANITA MATOS

Sworn to before me this
8TH day of January, 2016

_____
**Notary Public**

JAMES M. O'HARA
Notary Public, State of New York
No. 02OH5013461
Qualified in Nassau County
Commission Expires July 15, 2019