UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                        USDC SDNY
                                        DOCUMENT
                                        ELECTRONICALLY FILED
                                        DOC #:_____
                                        DATE FILED: JUN 0 8 2016
```

James Fischer,

          Plaintiff,

  –v–

Dean Eric Stiglitz *et al.*,

          Defendants.

15-CV-6266 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Presently before the Court are the motions to dismiss for lack of personal jurisdiction filed by Defendants Dean Eric Stiglitz, Laurie Anne Herboldsheimer, and Golden Rule Honey, LLC.[1] For the reasons articulated below, the motions to dismiss are GRANTED.

## I.   BACKGROUND

    Plaintiff James Fischer and Defendants Stiglitz and Herboldsheimer are avid beekeeping enthusiasts. Dkt. No. 30 ("Am. Comp.") ¶¶ 23, 48. While Plaintiff has a line of beekeeping products, *id.* ¶ 48, Defendants are the authors of a book entitled *The Complete Idiot's Guide to Beekeeping*. *Id.* ¶ 21. Plaintiff alleges that Stiglitz and Herboldsheimer espouse an "unorthodox philosophy" with respect to beekeeping and that their "book presents [a] dubious and highly speculative approach to animal husbandry." *Id.* ¶¶ 23, 32. The dispute between the parties has its origin in a series of internet posts about beekeeping and the Defendants' book.

---

[1] Defendant Stiglitz included a motion for sanctions in his sur-reply. Dkt. No. 61 at 12. Because "[a] motion for sanctions must be made separately from any other motion" and served on the non-moving party 21 days prior to being filed with the Court, Fed. R. Civ. P. 11(c)(2), this motion is denied as procedurally improper. *See Castro v. Mitchell*, 727 F. Supp. 2d 302, 305 (S.D.N.Y. 2010).

1

In August 18, 2010, Stiglitz posted in an online beekeeping forum under his username "deknow." Am. Comp. ¶ 49; *id.* at 27. In the post, Stiglitz indicated that the editor of his book "had received an email from someone with grave concerns" about the book. *Id.* at 27. Stiglitz characterized this person as "a bully . . . trying to tell a publisher that they can't have a book that talks about treatment free beekeeping." *Id.* In the post, Stiglitz copied the entirety of the email allegedly received by his publisher. This email, signed "james fischer" of Gotham City Honey Co-Op, *see id.* at 30, reads, in select part:

> It isn't often that we run across a book that we have to warn our 800 members to NOT buy, but your "Complete Idiot's Guide to Beekeeping" is such a book. . . . You have been taken in by a glib member of a group that deliberately ignores what has been patiently explained to them over and over by world-renowned credentialed experts in the field. . . . While one must accept that there will always be opportunists like Mr. Stiglitz to exploit the ignorance of novices for personal profit, one is forced to wonder how the editors at "Complete Idiots Guides" [*sic*] missed the fact that the entire "small cell" and "regression" approach to controlling diseases and pests of honey bees has been universally debunked by multiple controlled studies. . . . I would be happy to put together a group of experts to come to New York and confer with you on this book, as it is important to inform you of exactly how misleading this book is, and how much revision is required to add appropriate disclaimers and qualifications to the text.

*Id.* at 28-30. Below the copied email, Stiglitz asked members of the group to "[k]eep sending emails in support of the book and/or in critique of Jim's email to . . . our editor and our agent." *Id.* at 31. Stiglitz referenced this email again on December 12, 2012 when he posted in an online beekeeping forum: "What if Jim Fischer threatened your publisher with litigation if they didn't recall the book you wrote talking about what you actually do?" *Id.* at 38.

In May 2013, someone forwarded Stiglitz's August 2010 post to Plaintiff. *Id.* ¶ 24. Plaintiff then emailed Stiglitz insisting that "he did not know of and had never met Defendants," had not written any such email, and "ask[ed] for an explanation" for the post. *Id.* ¶ 25. In

2

response to this correspondence, Defendant Stiglitz posted in another beekeeping forum on June 18, 2013:

> If anyone remembers a few years ago, an email was sent to our publisher attempting to get our book pulled from store shelves. . . . Well, I'm now getting emails from the perpetrator claiming that he never sent them . . . and accusing me of making them up, forging his email address, and using it as a way to try and boost our book sales. Jim is known for these kinds of things. The best way to deal with them is to let them see the light of day[.] Lies and intimidation thrive in the dark.

*Id.* at 33.

Defendant Stiglitz discussed Plaintiff in another beekeeping forum in August 2014. Posting in a discussion thread reviewing Plaintiff's product, Stiglitz wrote: "Considering who makes the stuff, it might work better if you add a $30 cocktail to what comes in the bottle . . . and threaten to sue the bees if they don't do what you want." Am. Comp. at 35. In response to another commenter's question, Stiglitz elaborated:

> Jim writes extensively about fancy drinks at fancy bars, has threatened to sue me, my publisher, the organic list, bee-I, and I expect some of the other well known lists/forums. He has lied blatantly and publicly time and time again regarding me and many other members of beesource. If someone from a company being rude on the phone is relevant to the product (it is), then the inexplicably toxic actions of the person with their name on the bottle are certainly relevant. I was being funny about it to keep myself and others amused. Honestly, the subject doesn't deserve the time it would take to lay out the very well documented history (like the archives of the organic list that were deleted under threat of legal action from Jim . . . he demanded that his own, unedited posts and replies to them and any mention of his name be deleted from the archives). Nothing like a scientist with a mission to revise history.

*Id.* at 37.

In August 2015, Plaintiff filed suit based on the posts described above. Dkt. No. 1. His Amended Complaint raises defamation, tortious interference with prospective economic

3

advantage, New York Civil Rights Law, "personal injury," and Lanham Act claims. Am. Comp. ¶¶ 50, 62, 72, 106, 111. Based on his New York Civil Rights Law claims, Plaintiff requested a preliminary injunction to compel Defendant Stiglitz to delete the challenged posts from the internet forums in which they appeared. Dkt. No. 7. The Court denied this request, concluding that Plaintiff did not demonstrate a likelihood of success on the merits on those particular claims. Dkt. No. 48 at 3-4. While the preliminary injunction motion was pending, Defendants filed their motions to dismiss. Dkt. Nos. 38, 44. Because Defendants Stiglitz, Herboldsheimer, and Golden Honey LLC are domiciled in Massachusetts, *see* Am. Comp. ¶¶ 3-5; Dkt. No. 40 at 1; Dkt. No. 46 ¶¶ 2-3, a fact which Plaintiff does not contest, they argue that the Court lacks personal jurisdiction over them.

## II.  LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* ("*BBL I*"), 171 F.3d 779, 784 (2d Cir. 1999)). In deciding a Rule 12(b)(2) motion, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties. *See id.* If the Court "relies on the pleadings and affidavits, and chooses not to conduct a 'full-blown evidentiary hearing,' plaintiffs need only make a *prima facie* showing of personal jurisdiction over the defendant," *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008) (quoting *DiStefano*, 286 F.3d at 84), and the Court will "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." *DiStefano*, 286 F.3d at 84. Additionally, because Plaintiff is proceeding *pro se*, the Court "read[s] his supporting papers liberally, and will interpret them to

4

raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## III.   DISCUSSION

Three requirements must be met before a federal court may exercise personal jurisdiction over a defendant. "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Second, personal jurisdiction must be authorized by the long-arm statute "of the state in which the court is located." *Id.* at 60 (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 4(k)(1)(A). Finally, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at 60. Defendants only challenge the second element of personal jurisdiction, authorization under the New York long-arm statute.

Unlike the long-arm statutes of many other states, "[t]he New York long-arm statute does not extend . . . to the constitutional limits." *Licci*, 673 F.3d at 60-61. Section 301 of New York's Civil Practice Law and Rules ("CPLR") establishes general jurisdiction over anyone who "has engaged in . . . a continuous and systematic course of 'doing business'" in New York. *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990). Section 302 establishes specific jurisdiction over individuals who engage in certain specifically enumerated conduct. That section provides, in relevant part:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, *except as to a cause of action for defamation of character* . . . ; or

> 3. commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character* . . . .

CPLR § 302(a) (emphasis added). The Court will first evaluate jurisdiction under § 301 and will then turn to the subdivisions of § 302.

### A. Personal Jurisdiction Under CPLR § 301

Section 301 of the CPLR, a general jurisdiction provision, permits New York courts to "exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." This statute reaches those who "ha[ve] engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp.*, 565 N.E.2d at 490. The analysis under § 301 is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (quoting *Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04-CV-5238 (GEL), 2005 WL 1500896, at *2 (S.D.N.Y. June 23, 2005) (Lynch, J.)), *aff'd*, 277 F. App'x 92 (2d Cir. 2008). As a result, jurisdiction will only be found when a defendant does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp.*, 565 N.E.2d at 490 (quoting *Tauza v. Susquehanna Coal Co.*, 115 N.E. 915, 917 (N.Y. 1917)).

Courts in New York "have focused on a traditional set of indicia" in evaluating jurisdiction under this prong, including:

> whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests.

6

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000). Section 301 also reaches those who solicit business in New York in a "substantial and continuous" way, *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990), and operators of websites "purposefully directed towards New York." *Biro v. Nast*, No. 11-CV-4442 (JPO), 2012 WL 3262770, at *5 (S.D.N.Y. Aug. 10, 2012) (quoting *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05-CV-6939 (MBM), 2006 WL 1147963, at *4 (S.D.N.Y. May 1, 2006).

Defendants satisfy none of these criteria. They have no offices, bank accounts, telephone listings, public relations work, or employees[2] located in New York. Dkt. No. 52 ¶¶ 4-7, 19. While Defendants have spoken at conferences in New York, possibly advocated their book at those conferences, and sold honey to a handful of business located in New York, Am. Comp. ¶¶ 8, 10; Dkt. No. 52 ¶¶ 6, 12-13, Plaintiff's allegations, even when "construe[d] . . . in the light most favorable to [Plaintiff], resolving all doubts in his favor," *DiStefano*, 286 F.3d at 84, do not suggest that Defendants have engaged in "substantial and continuous" solicitation of business in New York. *Landoil Res. Corp.*, 918 F.2d at 1043. Finally, although Defendants operate a website that is accessible to New York residents, Am. Comp. ¶ 9; Dkt. No. 52 ¶ 18, there is no allegation that the website is "purposefully directed towards New York." *Biro*, 2012 WL 3262770, at *5 (quoting *Holey Soles*, 2006 WL 1147963, at *4). As a result, Defendants do not satisfy the "stringent" requirements for the exercise of jurisdiction under CPLR § 301. *Skvortsov*, 407 F. Supp. 2d at 567 (quoting *Freeplay Music*, 2005 WL 1500896, at *2).

---

[2] In his complaint, Plaintiff vaguely alleges that Defendants have hired "subcontractor[s]" in New York "on multiple occasions." Am. Comp. ¶ 10; *see also* Dkt. No. 49 at 9. Defendants' exposition of the nature of these relationships, *see* Dkt. No. 51; Dkt. No. 52 ¶¶ 5-7, even when "construe[d] . . . in the light most favorable to [Plaintiff], resolving all doubts in his favor," *DiStefano*, 286 F.3d at 84, makes clear that these individuals are not "permanently located in the state to promote [Defendants'] interests." *Wiwa*, 226 F.3d at 98.

7

### B. Personal Jurisdiction Under CPLR §§ 302(a)(2) and (3)

Sections 302(a)(2) and (3) of the CPLR, which ordinarily govern personal jurisdiction over anyone who "commits a tortious act," do not apply to "cause[s] of action for defamation." This "exception" applies if a plaintiff's claims are all "based upon [the same] alleged defamatory statements" such that the "entire complaint sounds in defamation." *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); *see also Dupont v. New Jersey State Police*, No. 08-CV-10220 (DLC), 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009) ("The defamation exception . . . applies to allegations that in fact sound in defamation, not just allegations that explicitly bear a defamation label."). To ensure that a plaintiff does not "evade the statutory exception by recasting [his] cause of action as something other than defamation," *Cantor*, 88 F.3d at 157, "[c]ourts must look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation." *Morsy v. Pal-Tech, Inc.*, No. 07-CV-2143 (PKL), 2008 WL 3200165, at *5 (S.D.N.Y. Aug. 7, 2008). Both state tort claims and federal claims may fall within the defamation exception if those claims are based on allegedly defamatory statements. *See Dupont*, 2009 WL 2486052, at *2, *9-*10 (Cote, J.) (applying the defamation exception to a § 1983 action); *Donini Int'l, S.p.A. v. Satec* (U.S.A.) LLC, No. 03-CV-9471 (CSH), 2004 WL 1574645, at *4 & n.3 (S.D.N.Y. July 13, 2004) (applying the defamation exception to a Lanham Act claim); *see also Cantor*, 88 F.3d at 157 (applying the defamation exception to injurious falsehood and tortious interference with prospective economic advantage claims).

In his Amended Complaint, Plaintiff challenges Defendant Stiglitz's internet posts under the username "deknow" as defamatory. Am. Comp. ¶¶ 72-104. Plaintiff also asserts tortious interference with prospective business advantage and intentional infliction of emotional distress

claims, as well as claims under the New York Civil Rights Law and the Lanham Act, *see id.* ¶¶ 50-71, 105-115, "all based on allegations that the Defendants published false claims about Plaintiff[] online." *Shamoun v. Mushlin*, 12-CV-3541 (AJN), 2014 U.S. Dist. LEXIS 45617, at *12 (S.D.N.Y. Mar. 26, 2014). Plaintiff attempts to characterize the defamatory character of these statements as "incidental" to the other violations, particularly the New York Civil Rights Law claims. *Id.* ¶¶ 31, 38, 41. A close reading of the complaint, however, demonstrates that the defamation is not incidental to his other claims; instead, his "entire complaint sounds in defamation." *Cantor*, 88 F.3d at 157. Not only does Plaintiff's defamation claim take up far more space in the complaint than any other cause of action (at 32 paragraphs and almost nine pages), *see id.* ¶¶ 72-104, but all of his other "claims —regardless of how they are denominated—rest on Defendants' allegedly defamatory statements." *G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885 (VEC), 2014 WL 6604790, at *3 (S.D.N.Y. Nov. 21, 2014); *see also* Am. Comp. ¶¶ 51, 56-59, 63, 67.[3] Because Plaintiff's "claims are factually based upon the allegedly defamatory statements published online, [] the defamation exception applies and neither [§] 302(a)(2) nor [§] 302(a)(3) can support personal jurisdiction over the Defendants." *Shamoun v. Mushlin*, 2014 U.S. Dist. LEXIS 45617, at. *12-13.

In an attempt to avoid this conclusion, Plaintiff's opposition to Defendants' motion to dismiss purports to withdraw his defamation claim and proceed solely on his other causes of action. *See* Dkt. No. 49 at 4-5; Dkt. No. 54 at 7. In *Cantor*, the Second Circuit made clear that a plaintiff "may not evade the statutory exception [under CPLR §§ 302(a)(2) and (3)] by recasting their cause of action as something other than defamation." *Cantor*, 88 F.3d at 157. As a result,

---

[3] That Plaintiff's "entire complaint sounds in defamation," *Cantor*, 88 F.3d at 157, is further demonstrated by the weakness of his non-defamation claims. *See* Dkt. No. 48 at 3-4 (denying Plaintiff's motion for a preliminary injunction for failure to demonstrate likelihood of success on the merits on his New York Civil Rights Law claims).

9

"[a] plaintiff may not escape the special rules applicable to allegations of defamation through artful pleading." *Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12-CV-8857 (SAS), 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013). Because the Court has concluded that Plaintiff's "entire complaint sounds in defamation," *Cantor*, 88 F.3d at 157, he cannot avoid the defamation exception by withdrawing his defamation claim while continuing to pursue other claims "based on allegations that the Defendants published false claims about [him] online." *Shamoun v. Mushlin*, 2014 U.S. Dist. LEXIS 45617, at *12.

### C. Personal Jurisdiction Under CPLR § 302(a)(1)

Although a plaintiff may not establish personal jurisdiction over defamation defendants under §§ 302(a)(2) and (3) of the CPLR, "courts will entertain defamation cases against non-domiciliaries so long as jurisdiction exists under [CPLR] § 302(a)(1)." *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 245-46 (2d Cir. 2007). This specific jurisdiction provision permits a court to exercise jurisdiction over a non-domiciliary so long as two requirements are met: (1) the defendant "transacts any business within the state"; and (2) the "cause of action aris[es] from" that transaction. CPLR § 302(a)(1).

#### 1. Transacting Business Within the State

Transacting business for the purpose of CPLR § 302(a)(1) requires "some act by which [a] defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 246 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)). However, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." *SPCA of Upstate New*

*York, Inc. v. Am. Working Collie Ass'n* ("*SPCA*"), 963 N.E.2d 1226, 1230 (N.Y. 2012) (quoting *Best Van Lines*, 490 F.3d at 248). Under § 302(a)(1) in the defamation context:

> [T]he single act of uttering a defamation, no matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction. In other words, when the defamatory publication itself constitutes the alleged transaction of business . . . , more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it.

*Best Van Lines*, 490 F.3d at 248 (internal quotations and alterations omitted). Defamation on the internet is not a "transact[ion of] . . . business" in New York for the additional reason that such statements are "accessible in this state, . . . [but] equally accessible in any other jurisdiction." *SPCA*, 963 N.E.2d at 1229. As a result, to establish personal jurisdiction over a defendant in an internet defamation case such as this, a plaintiff must demonstrate that a defendant's contact with New York "included something more" than the defamation alleged. *Best Van Lines*, 490 F.3d at 249. This standard, which rejects the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984), leaves "[s]ome distance . . . between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute" in the defamation context. *Best Van Lines* 490 F.3d at 248, 254 n.14.

Plaintiff here alleges that Defendants have a number of contacts with New York other than the defamation alleged, including: (1) purchasing honey from a New York-based seller; (2) selling honey to retailers located in New York; (3) contracting with a New York-based publisher to publish *The Complete Idiot's Guide to Beekeeping*; and (4) attending conferences in New York. *See* Dkt. No. 49 at 9; Dkt. No. 52 ¶¶ 4-6, 12-13. Because Plaintiff does not allege that Defendants' contacts with New York are limited to the dissemination of the allegedly defamatory statements, the Court will consider the second prong of § 302(a)(1).

## 2. A Cause of Action Arising From Those Transactions

A cause of action "aris[es] from" a transaction of business within the state under CPLR § 302(a)(1) when there exists an "'articulable nexus' or a 'substantial relationship'" between the transaction and cause of action. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (quoting *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)). In defamation cases brought under § 302(a)(1), "[c]ourts have typically found long-arm jurisdiction . . . where the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work." *Biro v. Nast*, No. 11-CV-4442 (JPO), 2012 WL 3262770, at *10 (S.D.N.Y. Aug. 10, 2012); *see also Legros v. Irving*, 327 N.Y.S.2d 371, 373 (1st Dep't 1971) (the "work attendant upon publication," like research, contract negotiations, and printing the allegedly defamatory book, occurred in New York); *Montgomery v. Minarcin*, 693 N.Y.S.2d 293, 296 (3d Dep't 1999) (a defamatory news broadcast was shown "by a local television station" in New York and was "researched, written, [and] produced" in New York). Two recent cases where the Court of Appeals found such purposeful activity lacking are instructive for delineating the scope of this requirement.

In *Talbot v. Johnson Newspaper Corp.*, 522 N.E.2d 1027 (N.Y. 1988), the California domiciliary defendant sent a letter from California to the New York-based university that his daughter, a co-defendant and also a California domiciliary, had formerly attended. *Id.* at 1028. In the letter, the man relayed his daughter's description of inappropriate behavior of a university faculty member at a campus party some years prior. *Id.* Although the allegedly defamatory letter described activities that the daughter had personally observed while a student in New York, the Court of Appeals found that there was an insufficient nexus between the defendants' New

York contacts and the alleged defamation to authorize the exercise of jurisdiction under § 302(a)(1) over either the man or his daughter. *Id.* at 1028-29.

The Court of Appeals reached a similar conclusion in *SPCA of Upstate New York, Inc. v. American Working Collie Ass'n*, 963 N.E.2d 1226 (N.Y. 2012). In that case, a woman domiciled in Vermont visited an SPCA location in New York to donate supplies to care for injured animals. *Id.* at 1227-28. Bothered by the conditions she witnessed at the SPCA, the woman wrote an internet post after returning home to Vermont detailing the abuses she had observed. *Id.* at 1228. In finding that New York courts could not exercise jurisdiction over the defendant, the Court of Appeals highlighted that she "did not visit New York *in order to* conduct research, gather information or otherwise generate material to publish on the group's Web site." *Id.* at 1229 (emphasis added). Rather, the defendant's travel to New York was for the purposes of assisting injured animals. *Id.* For this reason, despite the fact that the allegedly statements were made about activity that the defendant observed while in New York, the Court of Appeals found that there was no "substantial relationship between the allegedly defamatory statements and the defendants' New York activities." *Id.* In so holding, the Court of Appeals noted:

> Through CPLR [§] 302, the Legislature has manifested its intention to treat the tort of defamation differently from other causes of action and we believe that, as a result, particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that . . . the proper nexus exists between the transaction and the defamatory statements at issue.

*Id.* at 1230. The Court of Appeals did, however, suggest that more "substantial" ties to New York might lessen the required showing that New York activities were initiated "in order to" engage in the allegedly defamatory activity. *Id.* at 1229-30.

13

*Talbot* and *SPCA* illustrate that, absent a quite substantial connection to New York, a defendant must engage in the relevant New York-based activity with the *intent* to create the allegedly defamatory work for jurisdiction to lie under CPLR § 302(a)(1). This conclusion is consistent with the application of § 302(a)(1) in federal and lower state courts. *See Biro*, 2012 WL 3262770, at *13 (research and investigation for allegedly defamatory article was conducted in New York); *Legros*, 327 N.Y.S.2d at 373 (research and contract negotiations occurred in New York); *Montgomery*, 693 N.Y.S.2d at 296 (a news broadcast was "researched, written, [and] produced" in New York). As alleged by Plaintiff, Defendants' activities do not meet this standard.

It is clear that Defendants do not buy and sell honey or engage in other commercial activities in New York "in order to . . . generate [allegedly defamatory] material to publish" about Plaintiff, *SPCA*, 963 N.E.2d at 1229, and their commercial activities in New York are not sufficiently substantial to obviate the need for such a showing. Plaintiff argues that Defendants' defamatory statements were part of a "promotional campaign" to sell Defendants' book and other products, and that some of Defendants' sales were in New York. Dkt. No. 54 at 5. Put another way, Plaintiff argues that Defendants' commercial activities, a limited portion of which occurred in New York, provided a financial motive for them to engage in defamation.[4] Although Plaintiff attempts to use Defendants' New York activities as a jurisdictional hook, there is nothing unique about the relationship between Defendants' limited business in New York and the alleged defamation under Plaintiff's financial motive theory. In other words, Defendants' commercial activities in New York have no more "substantial [a] relationship" with the alleged defamation than their business interests in any other state, *SPCA*, 963 N.E.2d at 1229;

---

[4] Some of Defendants' alleged New York activities unrelated to sales, like *buying* honey from New York and using a New York publishing company, *see* Dkt. No. 49 at 9, are irrelevant under this financial motive theory.

14

*see also McDonald*, 362 F.3d at 23 (quoting *Kronisch*, 150 F.3d at 130), because Defendants' alleged financial motive is not unique to (or particularly strong in) New York. If this were sufficient to establish personal jurisdiction under CPLR § 302(a)(1), defamation defendants could be haled into court in New York anytime that they conduct some of their business in the state if an allegedly defamatory statement might advance a general financial interest of their business. Such an expansive reach of the long-arm statute in defamation cases is contrary to the New York Legislature's intent that "non-domiciliaries . . . not [be] haled into court in a manner that potentially chills free speech without an appropriate showing that . . . the proper nexus exists between the transaction and the defamatory statements at issue." *SPCA*, 963 N.E.2d at 1230. Absent any allegation that a significant financial interest unique to New York motivated the alleged defamation, the Court concludes that the connection between Defendants' limited New York commercial activities and allegedly defamatory statements "is too tangential to support the exercise of personal jurisdiction over defendants." *Id.* at 1230.

Because the Court concludes that it lacks personal jurisdiction over all three Defendants, it need not consider Defendant Herboldsheimer's additional argument that Plaintiff fails to state a claim against her.

## IV.  CONCLUSION

For the foregoing reason, Defendants' motions are granted and the case is dismissed without prejudice for lack of personal jurisdiction. The Clerk of Court is directed to close the case. This resolves Dkt. Nos. 20, 38, 44.

SO ORDERED.

15

Dated: June 8, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge